# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF NEW MEXICO

**THE UNITED STATES OF AMERICA**,

      Plaintiff,

  vs.                                No. CR 10-2734 JCH

**JOHN CHARLES McCLUSKEY**,

      Defendant.

## MOTION TO EXCLUDE PRISON GANG AND BOP EXPERT TESTIMONY, AND  REQUEST FOR DAUBERT HEARING

COMES NOW, Defendant John Charles McCluskey, by and through his counsel of record, Michael Burt and Theresa Duncan, and pursuant to Federal Rules of Evidence Rules 104(a), 402, 403, 702, 703, Federal Rule of Criminal Procedure Rule 16 and the Fifth, Sixth, and Eighth Amendments to the United States Constitution, and respectfully submits this Motion to Exclude Gang Expert Testimony And Request For *Daubert* Hearing .

This motion is based of Fed. R. Evidence 702, Fed. R. Evidence 403, 3593(c)(2), *Daubert v. Merrell Dow, Pharmaceuticals, Inc.* 509 U.S. 579 (1993) and *Kumho Tire Co. V. Carmichael,* 526 U.S. 137 (1999).  Pre-trial determination of the admissibility of such statements is necessary for the Court to fulfill its role

as gatekeeper in determining what expert evidence the jury should hear and to ensure that otherwise lengthy court proceedings are not interrupted by the lengthy proffers and sensationalist arguments about the Aryan Brotherhood when this case nothing to do with the Aryan Brotherhood.

The motion is based on the attached Memorandum of Points and Authorities, the complete files and records in this case, including all proceedings in this case, such additional evidence and argument as may be presented at the hearing on this motion.

## I.    Statement of Facts and Threshold Objections

The Government intends to offer evidence as to Mr. McCluskey's,

"demonstrated," allegiance and membership in the Aryan Brotherhood, a violent

criminal enterprise in order to secure his execution. [Doc. 275, p. 7] The

government has listed three rebuttal prison experts on the Supplemental Notice of

Intent to Offer Expert Testimony; Mr. Boggs, Mr. Smith, and Mr. Dodrill. [Doc.

386, p.8-10.] The witnesses are listed as rebuttal witnesses but the notice does not

list these witnesses as guilt phase or sentencing phase witnesses.  It is clear that

these witnesses intend  to offer testimony related to the Mr. McCluskey's alleged

involvement with the Aryan Brotherhood either at trial or at sentencing. To date,

the government has not turned over to Mr. McCluskey any discovery which shows

that Mr. McCluskey has "demonstrated" allegiance to the Aryan Brotherhood.  In

fact, the government has turned over discovery with regards to Tracy Province

suggesting that he has "demonstrated" allegiance to the Aryan Brotherhood.  A

common sense conclusion to the two preceding points is that Tracy Province or

another prison informant is going to be the fact bearer for the government's

allegation that Mr. McCluskey has "demonstrated allegiance" to the Aryan

Brotherhood, any attempt by Mr. McCluskey to rebut such a claim will be

confronted with the testimony of these three listed gang experts in this case.

On June 30, 2011, the Court entered a preliminary discovery order consistent with D.N.M.LR-Cr. 16.1.  [Doc. 203.]  Under that Order, Mr. McCluskey is deemed to have requested discovery under Fed. R. Crim. P. 16 unless he filed a waiver within seven days from the entry of the Order.  [*Id*.]  Mr. McCluskey did not file a waiver.   On September 9, 2011, this Court entered a Scheduling Order which set January 20, 2012 as the  "[d]eadline for government to complete all summaries and provide all reports on all experts, with all foundational data to be disclosed by February 17, 2012." [Doc. 220, p.1]. The Court set March 30, 2012 as the "[d]eadline for defense *Daubert* motions directed at government experts." (Id.).[1]

On January 30, 2012, the government filed a four page Notice of Intention To Offer Expert Testimony [Doc. 261]. This Notice concedes that the Notice itself does not comply with Rule 16(a)(1)(G), or this Court's Scheduling Order, for it explicitly states that "the United States will provide the experts' credentials, summaries, and reports as separate discovery, and foundational information at a later time..." (Id.). The Notice purports to be only a "list of experts and the subject area of their expected testimony." (Id.) The list includes the names of fifteen named experts in fourteen different areas of forensic science. The list does not

_____

[1] The Court has since extended the deadline to April 22, 2012. [Doc.  416].

constitute "a written summary of testimony...[which] describe[s] the witness's

opinions, the bases and reasons for those opinions, and the witness's

qualifications." Federal Rule of Criminal Procedure, Rule 16(a)(1)(G). Instead, for

each expert the Notice lists certain broad subject matters, and then indicates that

the expert's testimony "will include discussion of" that broad topic, without

indicating what that discussion will consist of. For example, with respect to the

prison gang testimony at issue in the present motion, the notice merely states that

the United States gives notice that it intends to introduce certain expert testimony,

including the testimony of :

> D. Scott Dodrill, It is anticipated the government will Mr. Dodrill as a
> witness in the areas of Bureau of Prisons conditions of confinement, and
> including but not limited to, classification of prisoners, rules, and statistics
> of misconduct within BOP.
> Leslie Smith, Chief, Counter Terrorism Unit, Federal Bureau of
> Prisons.  It is anticipated the government will call Mr. Smith as a witness in
> the areas of prison gang activity, including and not limited to Aryan
> Brotherhood activities.
> Keland Boggs, currently with the FBI Violent Street Gang Task
> Force, Phoenix.  It is anticipated the government will call Mr. Boggs
> as a witness in the areas regarding prison gang activity, specifically
> inmates affiliated with the Aryan Brotherhood.

[Doc.  261, p. 3].

On January 30, 2012, Mr.  McCluskey filed a <u>Motion to Compel Production</u>

<u>of Expert Disclosures in Compliance with Rules 16(a)(1)(G) and this Court's</u>

<u>Scheduling Order,  for Depositions of Government Experts Pursuant to Rules 2,</u>

16(a)(2), and 57, and for Adjustment of Scheduling Order. [Doc. 292]. In response to the motion, the government indicated that "[t]he United States will agree to provide to Defendant and this Court a further summary under Rules 702, 703, or 705 of the Federal Rules of Evidence of evidence it intends to present during its case-in-chief pursuant to Rule 16(a)(1)(G)." [Doc. 332, p. 50]. The government also indicated that depositions of the government's expert's was unnecessary because "numerous *Daubert* motions presumably will be heard by this Court wherein the experts for the Government will testify, as well as being available to testify at trial and subject to cross-examination." (Id.)

On March 30, 2012, over two months after the Court's January 20, 2012, deadline, the government filed a Supplemental Notice of Intent to Offer Expert Testimony. [Doc. 383]. The Supplemental Notice lists eleven expert witnesses.[2]

The summary with respect to the prison gang experts testimony is as follows:

The United States anticipates calling **D. Scott Dodrill** as a

---

[2] Four witnesses listed in the original notice (Dr. Nadia Granger, Dr. Lee M. Blum, Dan Wright, and Andrew Armstong) are not listed in the supplemental notice. In conversation with counsel following the last court appearance on April 3, 2012, the government clarified that the government did not intend to call these four witnesses. The government indicated agreement to Mr. McCluskey's position that he reserves the right to file *Daubert* or other motions challenging the admissibility of these four witnesses should the government change its position.

rebuttal witness. It is expected that Mr. Dodrill will testify regarding his knowledge and expertise about the Bureau of Prisons (BOP), in the areas of conditions of confinement, classification of prisoners, rules, and statistics of misconduct with BOP.  Mr. Dodrill is expected to testify based on his 32 years of experience in prison management experience with BOP.  He retired in 2011 as the Assistant Director, Correctional Programs Division, Senior Executives Service Staff member, after serving at nine federal correctional institutions, two regional offices and the central office.

Mr. Dodrill is also expected to testify regarding his development and writing of numerous policies within BOP, as well as his direction of training effort in all departments.  He is also expected to discuss his direction of all critical BOP inmate management and program functions, as well as inmate intelligence gathering and sharing, psychology services, drug abuse programs, security aspects, witness security, and designation and sentence computations.

----------------------------------------------------------------------

The United States anticipates calling **Leslie S. Smith**, Chief, Counter Terrorism Unit, Federal Bureau of Prisons, as a rebuttal witness.  It is expected Mr. Smith will testify, based on his experience and training within BOP since 1989, regarding the areas of prison gang activity including the Aryan Brotherhood prison gang, and its criminal activities.  Mr. Smith is expected to testify regarding his current post with the Counter Terrorism Unit, as well as his former assignment as a Special Investigative Agents at ADX Florence, which included managing the institution investigative and inmate intelligence operations.  Mr. Smith has testified as an expert witness numerous times regarding prison gang activity, specifically inmates affiliated with the Aryan Brotherhood.

----------------------------------------------------------------------

The United States anticipates calling **Keland Boggs**, Special Investigator with the Security Threat Group (STG) of the Arizona Department of Corrections (ADC) as a rebuttal witness.  Mr. Boggs is expected to testify based on his

> experience and training with his more than twelve years
> experience with ADC, and his assignment with the FBI Violent
> Street Gang Task Force, Phoenix, regarding security threat
> groups and criminal street gang members.  It is expected that
> Mr. Boggs will testify, based on his experience, training, and
> prior testimony as a qualified gang expert, about ADC prison
> gang activity, which includes the Aryan Brotherhood, its rules
> and criminal activities within the prison.

[Doc. 386, p. 9-10].

The supplemental notice, like the original notice, does not constitute "a written summary of testimony...[which] describe[s] the witness's opinions, the bases and reasons for those opinions, and the witness's qualifications." Federal Rule of Criminal Procedure, Rule 16(a)(1)(G). Saying that Mr. Boggs, Mr. Dodrill, and Mr. Smith will testify about "prison gang activity", does not tell us what that opinion is with regards to Mr. McCluskey's case especially when the government has not turned over any discovery establishing that Mr. McCluskey has "demonstrated allegiance" to the Aryan Brotherhood. Saying that their opinions will be "based on his experience, training, and prior testimony" does not begin to describe "the bases and reasons for those opinions."

It is clear that Mr. Dodrill, Mr. Smith and Mr. Boggs intend to testify both as lay and expert witness which causes Mr. McCluskey great concern regarding the scope of admissible testimony permitted under the Rules of Evidence.  If Mr. Dodrill's, Mr. Smith's and Mr. Boggs's opinion are largely based on their personal

investigation of this case then it should not be permitted under the guise of "expert" testimony because fact witnesses generally are not permitted to give opinion testimony or base their testimony on hearsay or other inadmissible evidence.

On the other hand, any attempt to present the testimony of Mr. Dodrill, Mr. Smith, and Mr. Boggs as interchangeable lay and expert witnesses also will cause Mr. McCluskey great prejudice as the jury likely will connote their entire testimony with the imprimatur of an expert.  Testimony of Mr. Dodrill, Mr. Boggs and Mr. Smith should be carefully scrutinized and precisely defined as to determine the scope to which it will qualify as expert or as lay witness testimony with an eye towards enhancing the reliability of the fact finding process and eliminating unfair prejudice to Mr. McCluskey.  Counsel seeks to exclude the bulk of what seems to be the government's "kitchen sink" prison expert testimony approach  due to the greater need tor reliability in death penalty proceedings.[3]

---

[3]Caldwell v. Mississippi, 472 U.S. 320, 105 S.Ct. 2633, 86 L.Ed.2d 231 (1985) (vacating sentence because prosecutor's remarks were inconsistent with the "heightened 'need for reliability'" in capital cases); United States v. Taveras, 424 F. Supp. 2d 446, 462 (E.D.N.Y. 2006)("Federal courts bear responsibility for ensuring that trials before them are conducted in conformity with statutory imperatives and the fairness required by the Fifth, Sixth, and Fourteenth Amendments. Because of heightened need for reliability in capital sentencing, the court should be exceptionally careful when considering whether to admit or exclude evidence...")(Weinstein, J.); United States v. Lawson, 653 F.2d 299, 302 (7th Cir.1981), certiorari denied 102 S.Ct. 1017, 454 U.S. 1150, 71 L.Ed.2d 305 ("In addition to the reasonable reliance requirement of Rule 703, a criminal defendant must therefore also have access to the hearsay information relied upon by an expert witness. Without such access, effective cross-examination would be impossible. Rule 705, which provides that an

An additional threshold objection to Mr. Boggs's and Mr. Smith's testimony is that the government's failure to provide an adequate summary and basis of Mr. Boggs's and Mr. Smith's testimony, including information they intend to rely on to make their testimony relevant with respect to Mr. McCluskey in violation of Federal Rule of Criminal Procedure Rule 16.

Federal Rule of Criminal Procedure 16(a)(l)(G) provides that, upon request, defense counsel is entitled to a written summary of the testimony of any expert witness the government intends to use during its case-in-chief, including "the witness's opinions, *the bases and reasons for those opinions*, and the witness's qualifications." (Emphasis added) The Advisory Committee Note to the 1993 amendment states that the required production under Rule 16 is intended to be

---

expert need not disclose the facts or data underlying his opinion prior to his testimony unless the court orders otherwise, recognizes this requirement. The Advisory Committee notes to that rule state that it 'assumes that the cross-examiner has the advance knowledge which is essential for effective cross-examination.' "); United States v. Williams, 447 F.2d 1285, 1290 (5th Cir. 1971), certiorari denied 92 S.Ct. 1168, 405 U.S. 954, 31 L.Ed.2d 231 (introduction of expert opinion without opportunity to cross-examine author as to bases of opinion would infringe confrontation clause rights of defendant);United States v. Robinson, 44 F. Supp. 2d 1345, 1346 (N.D. Ga. 1997)(excluding a fingerprint expert's opinion because the government did not produce all the points of identification on which the government's expert would rely as a basis for her opinion that the defendant's prints appeared on evidence; "If a defendant does not have the bases for the government's opinion, there is no way the defendant's counsel can effectively cross-examine the expert. It is this issue, which goes to the fairness of the trial, that the court must always keep in mind in dealing with discovery issues in a criminal case."). See generally, Delaware v. Fensterer, 474 U.S. 15, 22-23, 106 S.Ct. 292, 296, 88 L.Ed.2d 15  (1985) (reserving the question of " whether the introduction of expert testimony with no basis could ... be so lacking in reliability, and so prejudicial, as to deny a defendant a fair trial.")

comprehensive and "should cover not only written and oral reports, tests, and investigations, but any information that might be recognized as a legitimate basis for an opinion under Federal Rule of Evidence 703, including opinions of other experts." To date, the Government has not turned over any discovery indicating that Mr. McCluskey has "demonstrated" allegiance to the Aryan Brotherhood. [Doc. 275, p. 7.] Thus, the Court should exclude Mr. Dodrill's, Mr. Bogg's and Mr. Smith's testimony for violation of Rule 16.

### A.    This Court's Gate Keeping Duty, Under Daubert, Requires the Exclusion of Expert Opinion Testimony Proffered from Mr. Boggs and Mr. Smith in this case, as Unreliable, Irrelevant and Extremely Prejudicial to Mr. McCluskey.

Traditionally, Courts have been extremely diligent in limiting and excluding gang expert testimony due to the unreliable nature of the conclusions and the extremely prejudicial effect of such testimony. Why? Because the police expert's opinion is not based on some type of scientific technique. Generally, the police expert's opinion is based on information gathered from a host of sources including citizens, other law enforcement officers or agencies and gang members.

The problem is that, all too frequently, gang experts like Mr. Dodrill, Mr. Boggs, and Mr. Smith are allowed to testify as though their training and experience enable them to accurately predict Mr. McCluskey's future behavior in

this case or Mr. McCluskey's behavior generally. It would seem that this type of

testimony clearly runs afoul of the requirements set forth in the *Daubert* line of

cases. As one state court properly characterized the problem:

> "Just when a scientific principle or discovery crosses the line between
> the experimental and demonstrable stages is difficult to define.
> Somewhere in this twilight zone the evidentiary force of the principle
> must be recognized, and while courts go a long way in admitting
> expert testimony deduced from a well-recognized scientific principle
> or discovery, the thing from which the deduction is made must be
> sufficiently established to have gained general acceptance in the
> particular field in which it belongs. ( *Huntington v. Crowley* (1966)
> 64 Cal.2d 647, 653-654.)

This Circuit admits gang evidence under Evidence Code 801 when it is

substantively related to the indictment, the case, and generally believed that it is

"related to a subject sufficiently beyond common experience [so] that the opinion

of the expert would assist the trier of fact." *United States v. Quintana*, 70 F.3d

1167, 1170–71 (10th Cir.1995) (upholding admission of police detective's

testimony explaining terminology used by drug traffickers); *United States v.*

*Sturmoski*, 971 F.2d 452, 459 (10th Cir.1992) (upholding admission of agent's

testimony about the value of methamphetamine labs and the use of firearms to

protect the investment therein); *United States v. McDonald*, 933 F.2d 1519,

1520–23 (10th Cir.1991) (upholding admission of police detective's testimony

about pricing, packaging, use of firearms, and other features of street cocaine

sales).

However, District Courts in this circuit err in admitting gang evidence where inadequate foundation is offered in support of the evidence. *United States v Elkins* (1995, CA10 NM) 70 F3d 81. (Holding that in prosecution of defendant under federal firearms laws, the district court erred in admitting evidence of defendant's gang membership where foundation requirement of showing of common membership of defendant and witness in particular gang was not met.)

Specifically, before admitting the proposed expert testimony, the Tenth Circuit requires its district court to make a required specific, on-the-record findings that Mr. Dodrill's, Mr. Bogg's and Mr. Smith's testimony are reliable under *Daubert*. . *United States v. Roach* 582 F.3d 1192, 1207 (10th Cir. 2009); citing *Goebel v. Denver & Rio Grande W. R.R. Co.*, 215 F.3d at 1088(10th Cir. 2000) and *United States v. Cui Qin Zhang*, 458 F.3d 1126, 1129 (10th Cir.2006). In accomplishing that task, the Tenth Circuit has embraced the *Hankey* approach from the Ninth Circuit with regards to gang expert testimony. *Roach* at 1207 (10th Cir. 2009); see *United States v. Hankey,* 203 F.3d 1160 (9th Cir. 2000).

The admissibility of expert testimony is governed by Fed. R. Evid. 702. Under Rule 702, a witness may provide scientific technical or special knowledge, if it is determined that such a person is qualified as an expert.  Once qualified, the

13

expert witness may be permitted to offer opinion "if (1) the testimony is based upon sufficient facts or date, (2) the testimony is the product of reliable principle and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case." *Id.* According to Fed. R. Evid. 104 and 702, as interpreted by *Daubert,* the trial court functions as a gate keeper of all proffered expert opinion testimony and must determine the qualifications, relevance, and reliability of all such testimony before it may presented to the jury.

Here, the United States Government, must make a showing to the Court, that Mr. Dodrill, Mr. Boggs and Mr. Smith expert opinions are relevant, reliable and based on proper qualifications.  Relevance, of course, must be evaluated against the potential prejudice to Mr. McCluskey in light of the fact that their testimony is also intended for the purpose of securing a death sentence.  In that light, reliability is measured through the methodology upon which Mr. Dodrill, Mr. Smith, and Mr. Boggs base their opinions individually or collectively to help the jury reach the government's desired outcome in this case.  Expert qualifications are based upon Mr. Dodrill's, Mr. Smith's and Mr. Boggs's "knowledge, skill, experience, training or education" in their particular field. *Hankey,* at 1168.

Prejudice may also run from the introduction of Mr. Dodrill's, Mr. Boggs's

14

and Ms. Smith's opinion that stretches the bounds of relevance when there is no

identifiable record in this case that Mr. McCluskey is a member of a prison gang.

Simply qualifying Mr. Dodrill,  Mr. Boggs and Mr. Smith as gang experts does not

permit them to tell sensationalist stories about gangs, tattoos, hierarchy, or related

material that is more fit for Hollywood.  In *United States v. Long,* 917 F.2d 691

(2d Cir. 1990), the Second Circuit held that certain expert testimony regarding the

hierarchical structure and methods of operation of a crime family were improperly

introduced at a criminal RICO trial.  The court held that there was not a sufficient

connection between the crime family and the RICO enterprise.  As such, the court

held the expert testimony regarding the crime family to be inadmissible.  See *State*

*v. Deshay,* 669 N.W.2d 878, 886 (Minn. 2003)("that criminal gang involvement is

an element of a crime does not open the door to unlimited expert testimony").

*Hankey,* contains an excellent discussion of the problems inhere in receiving

gang expert testimony and the diligence with which courts must assess relevance

and reliability. *Id* at. 1160. The district court in *Hankey* conducted an extensive

motion in limine hearing outside the presence of the jury after which it refused

admission of some of the proffered gang expert testimony.  The court then gave a

limiting instruction as to the testimony it ultimately admitted.  In affirming the

conviction, the court congratulated the district court in conducting extensive voir

dire, making detailed findings and being diligent in assessing relevance and reliability. *Id.* In summary, *Hankey* approves the use of gang expert testimony: 1) after motion in limine consideration; 2) on limited issues (the evidence did not go towards proof of an element of the offense); 3) with full disclosure of the basis of the opinion; 4) with limiting instructions; 5) where there were extensive findings on relevance and reliability and the evidence was not unduly prejudicial. *Id.*

A case that followed *Hankey* also addressed gang expert testimony. See *United States v. Hermanek,* 289 F.3d 076 (9th Cir. 2002). Once again, the court considered expert testimony offered for an extremely limited purpose, that of interpreting drug slang or drug codes. Although affirming the conviction on a harmless error analyses, the court faulted the district court for failing to sufficiently establish the reliability of the expert's methods for interpreting slang. There the expert described a background and experience in gang investigations somewhat similar to that described by Mr. Dodrillm, Mr. Smith, and Mr. Boggs. There, the expert never explained the methodology used in reaching conclusions or how the methodology he utilized was ever established to be reliable. In a detailed analysis of the inadequacy of the foundation for the opinion, the court state in part:

> Broderick's qualification on the stand did not establish that his interpretation of new words and phrases were supported by reliable

methods.  The government offered only Broderick's general qualifications, his extensive experience and knowledge of drug terminology based on several years investigating the cocaine trade in the Bay Area and interpreting hundreds of intercepted communications.  These qualifications are relevant but standing alone they neither explain or establish the reliability of Broderick's interpretations of new words and phrases.  It is well established that bare qualifications alone cannot establish the admissibility of scientific expert testimony (citing *Daubert*)...after *Kumho* that proposition indisputably carries over to non-scientific expert testimony as well...As a prerequisite to making the Rule 702 determination that an expert's methods are reliable, the court must assure that the methods are adequately explained..the factors Broderick identified - his knowledge and prior investigation of the defendants and the evidence seized in the case - were too vague and generalized to satisfy the requirements of Rule 702.  Under Rule 702, the proffered expert must establish that reliable principles and methods that underlie the particular conclusions offered here...Without a link between Broderick's knowledge and the particular matter he interpreted, there is simply too great an analytical gap between the data and the opinion proffered.  *Id.* at 1093-1095.

At this point, the analytical gap in Mr. McCluskey's case does not even exists since he has not discovery in his possession indicating that he has "demonstrated allegiance" to the Aryan Brotherhood.  Thus, the potential testimony of Mr. Dodrill, Mr. Smith, and Mr. Boggs must be carefully examined in order to determine the specific areas on which they qualify as experts, that their proffered testimony is relevant and reliable, and based on a specific methodology accepted and proven to be reliable.  The Court should follow the vigilance exercised by the Court in *Hankey*.  Other than the summary provided thus far, Mr.

McCluskey has not yet received a sufficiently detailed recitation from the government regarding either a summary of Mr. Dodrill's, Mr. Boggs's, and Mr. Smith's opinion or the bases in order to properly evaluated the scope of any proffered expert testimony under Rule 702.

**B.      Mr. Boggs and Mr. Smith Cannot Be Used To Bootstrap Inherently Unreliable Prejudicial Hearsay From Informants Into Evidence Causing the Receipt of the Imprimatur of An Expert Witness**

Only matters that follow from the specific expertise of a gang expert may be admitted under Rule 702. The reason for this is that Rule 702 permits experts to offer opinion based on otherwise inadmissible evidence such as hearsay. Thus, that opinion, like a house, is only as solid as the informant upon which it rests. The government has turned over hundreds of names of prisoner who are potential witnesses in this case. If the underlying basis for these expert's conclusions is that type or similar type of information, a source of which is historically been flawed, at times fraudulent, most times self-serving, or highly biased, then their conclusions cannot stand as a matter of science.

Indeed, the whole point of the trial court's gate keeping function, defined in *Daubert,* is to limit the introduction of inadmissible and prejudicial evidence to the jury. See Fed. R. Evid. 703. ("facts or data that are otherwise inadmissible shall not be disclosed to the jury by the proponent of the opinion or inference

unless the court determines that the probative value in assisting the jury to evaluate the expert opinion substantially outweighs their prejudicial effect").

A fact witness may not introduce evidence based on hearsay or otherwise inadmissible evidence. See Fed. R. Evid. 701. As a gate keeper, the trial court must carefully prevent fact witnesses from introducing testimony that is reserved for qualified experts subject to judicial scrutiny under Rule 702. On the other hand, an expert may not introduce inadmissible evidence that is not within the scope of his or her qualifications, not relevant to the case and not based upon a reliable methodology. *United States v. Dekakini,* 326 F. 3d 45, 58 (2d Cir. 2001) ("the government has cited no case and we have found none, in which a court has permitted a witness to rely on hearsay for other, expert testimony"). Courts have recognized that Rule 702 and *Daubert* hearings should not be used as a tool for introducing otherwise inadmissible evidence through the lens of expert testimony. See for example, *State v. Deshay, supra,* ("the state should not be permitted to launder inadmissible hearsay evidence, turning it into admissible evidence by simple expedient of passing it through the conduit of a purportedly expert opinion"). This Court therefore must be vigilant in limiting Mr. Dodrill's, Mr. Boggs's and Ms. Smith's testimony in matters for which they are qualified and limiting opinions based on the relevance and reliability.

19

As the Court is aware, the possibility of prejudice is heightened here for good reason. In this case, Mr. Dodrill, Mr. Boggs, and Mr. Smith, as intelligence investigators who have had contacts with gang members in their respective fields, intend to use facts collected from those contacts, to offer testimony in this case regarding both the investigation of this crime and expert opinion on the nature of prison gang activity. See *Dukagini,* 326 F. 3d at 53 ("particular difficulties, warranting vigilance by the trial court arise when an expert, who is also the case agent, goes beyond interpreting code words and summarizes his beliefs about the defendant's conduct based on his knowledge of the case"). In *Dukagjini,* the court held that trial court failed in its gate keeping function to limit the scope of expert opinion offered by the government's gang expert who happened to be the investigating expert in that case. *Id.* at 55. Similarly, Mr. Boggs has claimed that he will base his opinions on his knowledge and experience of the Aryan Brotherhood as a result of his role as the "Special Investigator with the Security Threat Group (STG) of the Arizona Department of Corrections (ADC)...," and Mr. Smith has claimed that he managed, "inmate intelligence operations," in the areas of prison gang activity, "including the Aryan Brotherhood," while Mr. Dodrill claims he has generally been involved in intelligence gathering. (Doc. 386, p. 8-10.) Here, just as in *Dukagjini,* "there is a high risk that when a case agent/expert

strays from the scope of his expertise, he may impermissibly rely upon and convey hearsay evidence." *Id.* at 55. The testimony of individuals like Mr. Dodrill, Mr. Smith, and Mr. Boggs who simply recite facts as discovered through investigations of cases or this case cannot form the proper basis for expert testimony when those facts have not been proven to be reliable or admissible. Given their role in their respective fields as intelligence gatherers, their perspective and their focus on facts, Mr. Dodrill, Mr. Boggs, and Mr. Smith are more likely to stray from the scope of their expertise and testify about other aspects of the case, including the divulging of hearsay evidence. *Id.* at 56.

Equally dangerous in this  proceeding where jurors are asked to determine the ultimate question, life or death, is the prejudice caused by the dual role of investigators Mr. Dodrill,  Mr. Smith, and Mr. Boggs who have debriefed informants.  By wearing two hats at Mr. McCluskey's trial, then individually or collectively barraging the jury with their tales of prison life and gangs, the jury is likely to be confused during the testimony as to whether they are testifying as experts or as case investigators.  As observed in *Dukagjini,* "whenever a court permits a case agent to testify as an expert, there is a significant risk that if the witness disagrees from his expertise he will be improperly relying upon hearsay evidence and may convey hearsay to the jury."

In a case like Mr. McCluskey's case, where the notice of death simply reads, "e) Gang Membership. Defendant has demonstrated an allegiance to and membership in the Aryan Brotherhood, a violent criminal enterprise," [Doc. 275, at 7.] but the government has not offered any proof of that allegation, the problem is glaring and obvious.  First, the Court in *Dukagjini,* noted that when a fact witness such as a case agent or investigator functions as an expert, the government, "confers upon him the aura of special reliability and trustworthiness surrounding expert testimony which ought to caution its use." *Id.* In other words, the jury attaches a heightened credibility to the testimony of the same witness. The government intends to create a similar and if the aura dissipates with respect to one gang expert it hopes to bolster their prison gang theory by bringing two additional prison gang experts to the stand. The clear risk is that Mr. Dodrill, Mr. Boggs, and Mr. Smith, who are simply officers, intelligence gatherers, or record keepers will obtain unmerited credibility regarding their investigation of the case as opposed to a very limited area in which they may have bona fide expert qualifications, methodology and reliable testimony.

Second, an investigator officer, as opposed to an expert, should not be allowed to offer general conclusions about the alleged criminal conduct in a case, whether or not the testimony is admissible as expert opinion.  Such broadening of

the scope of permissible expert testimony implicates Rule 403 as it implies to the

jury that all the conclusions asserted by the witness have been drawn from a

reliable methodology.  As the *Dukagjini* court noted,

> Throughout much of Bigg's testimony, his conclusions appear to have
> been drawn largely from his knowledge of the case file and upon his
> conversations with co-conspirators rather than upon his extensive
> general experience with the drug industry...Biggs acted at time as a
> summary prosecution witness; the effect was a bolstering of the
> testimony of the cooperating co-defendants and imprinting upon the
> exclusive function of the jury.
> *Id.* at 55.  See also *Untied States v. Cruz,* 363 F.3d 187 (2d Cir. 2003), a

case reversing a drug conviction where a DEA case agent also testified as an

expert witness.  There the court's rational was based almost entirely on *Dukagjini.*

## C.    The Risk of Prejudice In a Death Penalty Case And Complexity of These Issues Warrant a Pre-Trial Daubert Hearing

Vigilant gate keeping in this case requires a pre-trial determination of the

witness' qualifications and bases of their opinions and proven methodologies

which support each line of proffered expert testimony.  The court should not wait

until trial as such delay will risk substantial prejudice to Mr. McCluskey.  For

example, if the admissibility of these opinion are not addressed before trial, the

government will likely introduce to the jury a preview of the proffered expert

testimony in its opening statement.  Once the jury is told that an "expert" such as

Mr. Dodrill, Mr. Boggs, or Mr. Smith has vouched for the like of Mr. Province,

Mr. Renwick, Ms. Welch, or any other informant witness, it is unlikely any instruction could cure the prejudice to Mr. McCluskey. The jury will simply believe that Mr. McCluskey must have "demonstrated allegiance" to the Aryan Brotherhood simply because Mr. Dodrill, Mr. Boggs, and Mr. Smith have testified about such matters.

Additionally, the fact that no discovery has been turned over to Mr. McCluskey with regards to his "demonstrated allegiance" to the Aryan Brotherhood, prejudice is compounded because unlike the government witnesses Mr. Smith, Mr. Dodrill, Mr. Boggs, Mr. McCluskey's investigators do not have access to prisoners, prisons, or the "intelligence" these witnesses intend to rely on. To ensure that Mr. McCluskey's sentencing is constitutionally reliable and that defense counsel renders effective representation, a proper *Daubert* hearing where Mr. McCluskey is armed with all necessary discovery is required for extensive voir dire and investigation. So the Court is aware and to alleviate mid-trial delay, defense counsel anticipates that effective cross examination of Mr. Dodrill, Mr. Boggs, and Mr. Smith is likely to take two or more days of trial time. The reason for such a lengthy hearing is that Mr. Dodrill, Mr. Boggs, and Mr. Smith have access to years worth and potentially millions of pages of information, some of which may be legitimately related to opinions and some of which are not. Also,

24

based on the summary disclosed by the government, it seems as though they intend to testify collectively on the broader issue of the Aryan Brotherhood and future dangerousness.  Other parts of the information will be useable for purposes of confrontation.  Counsel is entitled to examine in voir dire, Mr. Dodrill, Mr. Boggs, and Mr. Smith as to the entire informational record available to and consulted by all of them to challenge their qualifications and to distinguish which information formed their purported expert opinions and which conclusions were based solely on case investigation and intelligence operations.  Counsel needs to learn the names of the informants so that counsel can properly secure *Brady, Giglio,* and *Agurs* material.  Furthermore, if counsel learns that Mr. Dodrill, Mr. Boggs and Ms. Smith have relied on informant testimony, Mr. McCluskey will need to confront those informants at these hearings to protect his rights under the Confrontation Clause.

The complexity of Mr. McCluskey's charges, the fact that Mr. McCluskey is not charged under RICO or VICAR,, including the multiple aggravation allegations alleged to secure Mr. McCluskey's execution, further warrant careful scrutiny of the admissibility of expert evidence proffered to prove that Mr. McCluskey's has "demonstrated" allegiance to the Aryan Brotherhood.  Again and more important, since this case may very well proceed to a penalty phase, analysis

of the potential prejudice must be conducted not only under 403 but under 18

U.S.C.A. 3593(c).  A pre-trial determination of admissibility would provide the

court and the parties sufficient time to adequately prepare and present evidence at

such a hearing and to prepare for trial.  The same opportunity would not be

available if the hearing where held once the jury was impaneled.

**D.      Conclusion**

This is not a gang expert case.  There is no need to for Mr. Dodrill, Mr.

Boggs, and Mr. Smith to establish that an enterprise exists, and that Mr.

McCluskey play a role in the purposes or goals of that enterprise.  This is not even

charged as a gang-related case.  Mr. Province is the individual that has

"demonstrated" allegiance to the Aryan Brotherhood. Mr. Dodrill, Mr. Boggs, and

Mr. Smith intend to testify at Mr. McCluskey's trial.  If they do, it will violate Mr.

McCluskey's right to confrontation, to present a defense, to effective

representation, to a fair trial, and to due process of law if he is not afforded the

relief requested in this motion.

Dated: <u>April 22, 2012</u>

Respectfully submitted,

<u>/s/ Michael N. Burt</u>

Michael N. Burt

1000 Brannan Street, Suite 400

San Francisco, CA 94103-4888

415/522-1508


<u>/s/ Theresa M. Duncan</u>

Theresa M. Duncan

Freedman Boyd Hollander Goldberg Ives & Duncan P.A.

20 First Plaza, Suite 700

Albuquerque, NM 87102
505/842-9960


Attorneys for Defendant John McCluskey

27

**CERTIFICATE OF CONFERENCE**

I hereby certify that on April 22, 2012, I contacted Assistant United States Attorney Linda Mott to determine the government's position on this motion. Ms. Mott advised that the government is opposed to the motion.

/s/ Michael N. Burt

Michael N. Burt