IN THE UNITED STATES DISTRICT COURT

**FILED**

UNITED STATES DISTRICT COURT
LAS CRUCES, NEW MEXICO

FOR THE DISTRICT OF NEW MEXICO

OCT - 5 2011

~ 5:00 m

MATTHEW J. DYKMAN
CLERK

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) NO. CR 05-0924 RB |
| | ) |
| LARRY LUJAN, | ) |
| | ) |
| Defendant. | ) |

## COURT'S JURY INSTRUCTIONS

## PENALTY SELECTION PHASE

# INSTRUCTION NO. 1

Members of the Jury:

You have unanimously found the defendant, Larry Lujan, guilty of kidnapping resulting in death. This offense is punishable by death or by imprisonment for life without possibility of release. You have unanimously found the defendant eligible for the death penalty. The choice between death or imprisonment for life without possibility of release is left exclusively to you. Your decision will be binding on the court, and I will impose sentence on the defendant according to your choice. If you cannot unanimously agree on the appropriate punishment, I will sentence the defendant to life imprisonment without possibility of release.

# INSTRUCTION NO. 2

Let me summarize the deliberative process you must follow in considering the sentencing decision before you. You have already determined that the defendant is eligible for a sentence of death. Now, in the selection stage, you must determine whether such a sentence is justified and, thus, must be imposed.

The selection stage, which focuses on all relevant aggravating and mitigating factors, is broken down into two steps. First, you must determine what factors have been proved. As for the aggravating factors, you must unanimously determine that the government has proved beyond a reasonable doubt any additional statutory or non-statutory factors relied upon to support the death sentence. The defendant does not have to prove to you that the aggravating factors do not exist or that he should not be sentenced to death.

Proof beyond a reasonable doubt is proof that leaves you firmly convinced of the existence of any aggravating factor. There are few things in this world that we know with absolute certainty, and in criminal cases the law does not require proof that overcomes every possible doubt. It is only required that the government's proof exclude any "reasonable doubt" about the existence of any aggravating factor. A reasonable doubt is a doubt based on reason and common sense after careful and impartial consideration of all the evidence in the case.

In contrast, the defendant may prove mitigating factors by just a preponderance of the evidence; that is, by evidence sufficient to persuade you that the factor is more likely present than not present. Moreover, it is up to each juror to decide individually whether any

mitigating factor exists - there is no requirement that the defendant establish mitigating factors unanimously.

The second step involves a weighing process. You must decide whether the proved aggravating factors outweigh the proved mitigating factors sufficiently to justify the death sentence. If you do not find any mitigating factors, you still must decide whether any proved aggravating factors are sufficient to justify imposition of a death sentence. If you determine as a result of this weighing process that the factors do not justify a death sentence, such a sentence may not be imposed, and your deliberations are over.

If you determine that the factors do justify a death sentence, that sentence must be imposed. But as I will instruct you, weighing aggravating and mitigating factors is not a mechanical process, and the judgment involved is exclusively yours. Whatever findings you make with respect to aggravating and mitigating factors, the result of the weighing process is never foreordained. For that reason a jury is never required to impose a sentence of death. At this last stage of your deliberations, it is up to you to decide whether, for any proper reason established by the evidence, you choose not to impose such a sentence on the defendant.

Any decision to impose a sentence of death must be unanimous.

## INSTRUCTION NO. 3

You will be called upon to make findings on various matters. In doing so you are to consider only the testimony and exhibits admitted into evidence during the trial on the offense charged and the sentencing proceeding that has just concluded. I remind you that the statements, questions, and arguments of counsel are not evidence. And, of course, anything else you may have seen or heard outside the courtroom is not evidence and must be disregarded.

During these proceedings, I have ruled on objections to certain testimony and items of evidence. The admissibility of evidence is a legal matter for the court to resolve, and you must not concern yourselves with the reasons for my rulings. In your deliberations, you may not draw any inferences from my decisions to exclude or admit evidence.

## INSTRUCTION NO. 4

The process by which you must reach your decision requires that you make and record certain findings in a specific order. To ensure that your findings are stated clearly and in the required sequence, you will be given a Special Findings Form for the Selection Phase, to which I will refer throughout my instructions. You will also be given copies of my instructions. In light of the complexity and importance of your task, it is essential that you consider and follow the instructions and Special Findings Form together as you conduct your deliberations. Moreover, if any statement by counsel about the law guiding your deliberations appears to be different from my instructions and Special Findings Form, you must be guided by the instructions and Special Findings Form that I give you. It would be a violation of your sworn duty as jurors to base your decision upon any view of the law other than that reflected in the instructions and Special Findings Form.

## INSTRUCTION NO. 5

You are the sole judges of the credibility or "believability" of each witness and the weight to be given to the witness's testimony. An important part of your job will be making judgments about the testimony of the witnesses who testified in this case. You should think about the testimony of each witness you have heard and decide whether you believe all or any part of what each witness had to say, and how important that testimony was. In making that decision, I suggest that you ask yourself a few questions: Did the witness impress you as honest? Did the witness have any particular reason not to tell the truth? Did the witness have a personal interest in the outcome in this case? Did the witness have any relationship with either the government or the defense? Did the witness seem to have a good memory? Did the witness clearly see or hear the things about which he or she testified? Did the witness have the opportunity and ability to understand the questions clearly and answer them directly? Did the witness' testimony differ from the testimony of other witnesses? When weighing the conflicting testimony, you should consider whether the discrepancy has to do with a material fact or with an unimportant detail. And you should keep in mind that innocent misrecollection - like failure of recollection - is not uncommon.

The defendant did not testify and I remind you that you cannot consider his decision not to testify as evidence of anything. You must understand that the Constitution of the United States grants to the defendant the right to remain silent. That means the right not to testify. That is a constitutional right in this country, it is very carefully guarded, and you must not draw any inference from the fact that the defendant did not take the witness stand

and testify under oath.

In reaching a conclusion on a particular point, or ultimately in reaching a verdict in this case, do not make any decisions simply because there were more witnesses on one side than on the other.

## INSTRUCTION NO. 7

You have heard evidence of other alleged acts or crimes engaged in by the defendant. Specifically, you have heard evidence that the defendant may have committed the homicides of Juana Olmeda and Alfredo Gonzales in Chamberino, New Mexico in 1998, and that the defendant has engaged in acts of misconduct while in jail awaiting trial. This evidence was offered by the government for the limited purpose of proving the aggravating factor of future dangerousness and you may consider this evidence only for that purpose.

Specifically with regard to the Chamberino homicides, you may not consider the Chamberino homicides as an independent aggravating factor. You are not here to decide whether or not the defendant committed these crimes. The State of New Mexico has charged the defendant with the Chamberino homicides. Those charges are pending in state court. The innocence or guilt of the defendant for the Chamberino homicides will be determined in state court. You may only consider the evidence related to these killings to determine whether or not the government has proved, beyond a reasonable doubt, the existence of the non-statutory aggravating factor of future dangerousness. The evidence of the Chamberino homicides is merely a sub-factor that may support the overall factor of future dangerousness.

## INSTRUCTION NO. 8

Although it is left solely to you to decide whether the death penalty should be imposed, Congress has narrowed and channeled your discretion in specific ways, particularly by directing you to consider and weigh aggravating and mitigating factors presented by the case. These factors guide your deliberations by focusing on certain circumstances surrounding the crime, as well as the personal traits, character, and background of the defendant.

Aggravating factors are considerations that tend to support imposition of the death penalty. The government is required to specify the factors it relies on, and your deliberations are constrained by its choice. Even if you believe that the evidence reveals other aggravating factors, you may not consider them.

Mitigating factors are considerations that suggest that a sentence of death should not be imposed. They need not justify or excuse the defendant's conduct, but they may suggest to any one or more jurors that a punishment less than death may be sufficient to do justice in the case.

Your task is not simply to decide whether, which, or how many aggravating and mitigating factors are present in the case. You also must evaluate and weigh such factors and, ultimately, make a unique individualized judgment about the justification for and appropriateness of the death penalty as a punishment for the defendant.

## INSTRUCTION NO. 9

The government has alleged several aggravating factors in this case. During the Eligibility Phase, you unanimously found four statutory aggravating factors. These were:

1. Death during the commission of a kidnapping;

2. Heinous, cruel, or depraved manner of committing the offense;

3. Substantial planning and premeditation; and

4. Victim vulnerability.

The government has also alleged the existence of non-statutory aggravating factors in this case. These factors tend to support imposition of the death penalty, though they have not been specifically listed by Congress. The factors alleged by the government are:

1. Future Dangerousness

The defendant represents a continuing danger to the lives and safety of other persons. The defendant is likely to commit criminal acts of violence in the future that would constitute a continuing and serious threat to the lives and safety of others, as evidenced by at least one or more of the following:

    a. Continuing Pattern of Violence

The defendant has engaged in a continuing pattern of violence, attempted violence, and threatened violence, based upon your earlier finding of guilt on the charge in the Indictment; and the evidence of the double homicide for which the defendant has been charged by the State of New Mexico.

    b. Low Rehabilitative Potential

The defendant has demonstrated a low potential for rehabilitation as evidenced by his repeated acts of institutional misconduct while in the custody of various state and local correction or detention agencies, or the United States Marshals Service.

### c. Lack of Remorse

The defendant has demonstrated a lack of remorse for killing Dana Joseph Grauke II, as demonstrated by the defendant's statements following the offenses alleged in the Indictment.

### d. Gang Participation

The defendant has demonstrated an allegiance to, and active membership in, Barrio Azteca, a violent criminal enterprise.

### 2. Victim Impact

As reflected by the victim's personal characteristics as an individual human being and the impact of the offense on the victim and the victim's family, the defendant caused loss, injury, and harm to the victim and the victim's family.

These non-statutory aggravating factors are set out in Section I-A and B of the Special Findings Form and you must consider them separately. You must decide for each one whether you unanimously agree that it has been proved by the government beyond a reasonable doubt, indicate your answer on the Form, and continue until you have finished with them all. Under the future dangerousness factor, you will find the four sub-factors I just explained to you. You must decide for each one whether you unanimously agree that it has been proved by the government beyond a reasonable doubt, indicate your answer on the

Form, and continue until you have finished with them all. If you unanimously find that any one of the sub-factors exists, you must determine whether the government has proved beyond a reasonable doubt the future dangerousness factor. Regardless of your findings on these non-statutory factors, you must proceed to the next step in your deliberations, which involves consideration of mitigating factors.

# INSTRUCTION NO. 10

The law never assumes or presumes that a defendant should be sentenced to death. Accordingly, the defense is under no obligation to establish the existence of any mitigating factors or to disprove the existence of any aggravating factors. A defendant may, of course, choose to argue specific mitigating factors, and the defendant has offered evidence on the following factors in this case:

1.    If he is not sentenced to death, Larry Lujan will spend the rest of his life in a highly structured and secure federal prison without the possibility of release.

2.    Leticia Lujan, Larry Lujan's mother, was ill-equipped to raise Larry Lujan in a healthy, safe, and nurturing environment due to one or more of the following:

•    She was attempting to raise six children by five different fathers, none of whom were involved in a meaningful way in the children's lives;

•    She was addicted to heroin and cocaine;

•    She sold drugs throughout Larry Lujan's childhood and young adulthood;

•    She was a victim of violence from lovers, family members, and the community;

•    She served time in prison in both the Texas Department of Corrections and the New Mexico Department of Corrections, and was arrested repeatedly;

•    She was orphaned at 8 years of age and had no consistent or meaningful parental guidance.

3.    Larry Lujan was born into and raised in an environment where addiction to alcohol and drugs was commonplace.

4.      The adults in Larry Lujan's life were either absent, addicted, violent, broken or ineffective.

5.      As a child, Larry Lujan was raised by people who used and sold drugs, sexually abused others, and were violent.

6.      Larry Lujan had health problems as an infant and young child that made it difficult for him to walk, breathe, and talk.

7.      Larry Lujan did not do well in school. He failed and repeated the first, sixth, and seventh grades.

8.      Larry Lujan showed potential as a young boy to teachers, probation officers, and others.

9.      Larry Lujan has shown goodness to people who have known him throughout his life and to those who have known and visited him in jail.

10.     When Larry Lujan was a child, the people who were supposed to take care of him – including his uncle, mother, stepfathers, brother and sister – were arrested multiple times.

11.     When Larry Lujan was a child, he was sexually abused by his older brother, Alfred Gene "Gino" Lujan.

12.     When Larry Lujan was a child, his older brother, Alfred Gene "Gino" Lujan buried Larry Lujan and concealed him underground.

13.     When Larry Lujan was a child, he witnessed a number of people, including, but not limited to, his older brother Alfred Gene "Gino" Lujan, his mother Leticia Lujan, his uncle Rafael Martinez-Vasquez, and his stepfathers Alfredo Lujan and Arturo Arellano, threaten

physical harm or inflict violence on other people.

14.     When Larry Lujan was growing up, many of the people who were supposed to care for him were addicted to one or more of the following: heroin, cocaine, paint, glue, marijuana, prescription pills, and/or alcohol.

15.     Due to violence in the community, his family and the drug trade, Larry Lujan grew up in fear for his and his family's safety.

16.     Before Larry Lujan was 19 years old, he lost a number of loved ones to death, incarceration, drug addiction and abandonment.

17.     Larry Lujan had few or no positive male role models in his life.

18.     When Larry Lujan was 10 years old, he watched his older brother, Alfredo Gene "Gino" Lujan, attack his family, barricade himself inside the house, draw the El Paso Police Department SWAT team to the house, arm himself with knives that he threw at police, and hold his siblings hostage.  Larry Lujan's home was tear-gassed and his brother was arrested.

19.     Larry Lujan's sister, Mary Ann Lujan, supported the family in her mother's absence. Larry Lujan cared for the younger children when Mary Ann was at school or working.

20.     Despite the chaos in his home, Larry Lujan was generous, kind, and supportive to his younger siblings and younger cousins.

21.     While Larry Lujan was a child, his mother was reported to the Texas child welfare agency on multiple occasions for neglectful supervision.

22.     Larry Lujan, at thirteen years old, was subjected to maltreatment in New Opportunities and Ways School in New Braunfels, Texas because of one or more of the following: poor

nutrition, lack of educational, counseling, and recreational services, and poor health conditions. New Opportunities and Ways School closed while under investigation for mismanagement.

23.     Larry Lujan did not receive the help he needed when he was sent to New Opportunities and Ways School in New Braunfels.

24.     While Leticia Lujan was pregnant with Larry Lujan, she drank alcohol regularly and suffered multiple physical assaults.

25.     Larry Lujan had learning disabilities in school and low adaptive functioning as an adult.

26.     Larry Lujan became addicted to one or more of the following substances: paint, glue, alcohol, marijuana, Rohypnol, cocaine and Xanax. Some of Larry Lujan's substance addictions began when he was only 13 years old.

27.     Larry Lujan was bullied by kids at school and in the neighborhood. He saw people like his uncle Rafael Martinez-Vasquez as someone who could protect himself and others.

28.     Larry Lujan's role models taught him, since he was a child, that in order to survive, he had to "no te dejas," i.e., "don't let yourself," meaning "don't let others push you around."

29.     The adults in Larry Lujan's life did not intervene, provide support for, protect or guide him after one or more difficult life events.

30.     As a child, Larry Lujan did not receive meaningful intervention for any of the difficulties he experienced.

31.     Larry Lujan made attempts to make an honest living by working at a deli, detailing

cars, being an electrician's assistant, and digging ditches.

32.     Dana Joe Grauke II, engaged in criminal conduct that may have contributed to the circumstances leading to his death, in that he was involved in drug dealing.

33.     Every other participant in the kidnapping resulting in death of Dana Joe Grauke II, or the homicides of Alfredo Gonzales and Juana Olmeda, is either free, has never been charged with a crime, or will be released to the community in the next one to nine years. None are facing the death penalty or serving life in prison.

34.     There is evidence that Larry Lujan was not acting alone at the time of Dana Joe Grauke II's death.

35.     Larry was under the influence of drugs and alcohol at the time of Dana Joe Grauke II's kidnapping and death.

36.     There is evidence that Larry Lujan was not acting alone at the time of the deaths of Alfredo Gonzales and Juana Olmeda.

37.     Larry Lujan was under the influence of drugs and alcohol at the time of the deaths of Juana Olmeda and Alfredo Gonzales.

38.     Larry Lujan is important to his older sister, Mary Ann Lujan, and she loves him.

39.     Larry Lujan is an important person to his younger sister, Dora Vasquez, and she loves him.

40.     Larry Lujan is an important person to his younger brother, Jesse Lujan, and Jesse loves him.

41.     Larry Lujan is an important person to his younger brother, Adrian Arellano, and

Adrian loves him.

42.    Larry Lujan is an important person to his sons Alfredo and Arturo Lujan, and they love him.

43.    Larry Lujan is an important person to his cousins Gino and Ashbelle Martinez, and they love him.

44.    Larry Lujan maintains a loving, warm, and appropriate relationship with the children he raised, Alfredo and Arturo Lujan, and Gino and Ashbelle Martinez, even while incarcerated.

45.    Larry Lujan's family will suffer grief and loss if he is executed.

46.    Larry Lujan was exposed to risk factors as identified by the Department of Justice.

47.    Guards who have interacted with Larry Lujan feel he has been respectful of them while in jail.

48.    Even under the stress of a capital trial, Larry Lujan has shown respect and decorum in the courtroom.

49.    Larry Lujan has been working with Sophora Davis since 2008. Ms. Davis has observed in him genuine spiritual growth and a sincere desire to continue his self-improvement.

50.    Larry Lujan's life has value.

51.    There may be other factors in Larry Lujan's life, background, record, character, or any other circumstance of the offense that mitigate against imposition of a death sentence.

The defendant need only prove any one of these mitigating factors by a preponderance of the evidence, that is, by evidence sufficient to persuade you that the factor is more likely present than not present. And the law does not require unanimous agreement with regard to any mitigating factor. Any juror may find the existence of a mitigating factor and must then consider that factor in weighing the aggravating and mitigating factors even though other jurors may not agree that the particular mitigating factor has been established. Moreover, any juror may consider a mitigating factor found by another juror, even if he or she did not concur in that finding.

Your discretion in considering mitigating factors is much broader than your discretion in considering aggravating factors. The law permits you to consider any other relevant mitigating information presented in this proceeding, in addition to the specific factors recited above, so long as its existence was proved by a preponderance of the evidence. "Relevant mitigating information" includes anything in the defendant's background, record, character, or any circumstances of the offense, which suggests to you that a sentence of death should not be imposed. Throughout these instructions, references to mitigating factors should be understood to include other relevant mitigating information.

Record your findings as to the mitigating factors as indicated by the Special Findings Form. Regardless of your findings as to these factors, however, you must proceed to the next step in your deliberations, which involves weighing aggravating and mitigating factors.

# INSTRUCTION NO. 11

After completing your findings regarding aggravating and mitigating factors, you must engage in a weighing process to determine whether a sentence of death is justified. In this process, you must consider only those aggravating factors, statutory and non-statutory, that you unanimously found to exist. Each of you must also consider any mitigating factors that you individually found to exist, and you each may consider any mitigating factors found by any of the other jurors. You must determine whether the proven aggravating factor or factors sufficiently outweigh any proven mitigating factor or factors to justify a sentence of death.

The task of weighing aggravating and mitigating factors against each other, or weighing aggravating factors alone if there are no mitigating factors, is not a mechanical process. You should not simply count the number of factors, but consider the particular character of each, which may be given different weight or value by different jurors. What constitutes sufficient justification for a sentence of death in this case is exclusively left to you. Your role is to make a reasoned moral judgment. Whatever aggravating and mitigating factors are found, a jury is never required to conclude the weighing process in favor of a sentence of death. But your decision must be a reasoned one, free from the influence of passion, prejudice, or arbitrary consideration.

If you do not unanimously find that the aggravating factor or factors sufficiently outweigh the mitigating factor or factors to justify a sentence of death – or in the absence of any mitigating factor, that the aggravating factor or factors, considered alone, justify a sentence of death – answer "no" on the Special Findings Form, sign Verdict - Life

Imprisonment, and certify your decision as described in Section V of the Form, which will end your deliberations. If you unanimously find that the comparative weight of the aggravating factor or factors is sufficient to justify a sentence of death, answer "yes" on the Special Findings Form, sign Verdict - Sentence of Death, and certify your decision as described in Section V of the Form.

## INSTRUCTION NO. 12

In considering whether a sentence of death is justified, you shall not consider the race, color, religious beliefs, national origin, or gender of the defendant or of any victim. You are not to impose a death sentence unless you conclude that you would do so no matter what the race, color, religious beliefs, national origin, or gender of the defendant or the victim may be.

Whatever sentencing decision you reach, each of you is required by law to sign a certification attesting to the fact that you have followed this instruction. The certification is set out in Section V of the Special Findings Form.