IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

      Plaintiff,

    v.                                        Case No. 10-CR-2734 JCH

JOHN CHARLES McCLUSKEY,

      Defendant.

## DEFENDANT JOHN CHARLES MCCLUSKEY'S SEALED RESPONSE TO UNITED STATES' SEALED SENTENCING MEMORANDUM [DOC. 1636]

Defendant John Charles McCluskey respectfully submits this response to the government's sealed sentencing memorandum [Doc. 1636]. Although the government did not submit a single objection to the original or amended PSRs, it now raises a host of factual issues it claims are relevant to sentencing. Its objections are untimely. Further, none of its factual assertions will affect sentencing. As the government states in its memorandum, given the offenses for which Mr. McCluskey has been convicted, the Court is bound by statute to sentence Mr. McCluskey to life imprisonment. [Doc. 1636 at 1.] This point is not disputed. *See* 18 U.S.C. §§ 1111, 1512(a)(1)(C), and 1512(a)(3)(A). In its prayer for relief, the government asks the Court to adopt the guideline sentence set forth in the PSR (¶ 119) and not to depart or vary from that guideline sentence. [Doc. 1636 at 13.] However, Mr. McCluskey has not objected to the guideline sentence

and has not requested a departure or variance under the guidelines. The government's memorandum is not about sentencing.

The government rehashes many of the arguments it made at trial and suggests to the Court it has additional evidence to support a finding that Mr. McCluskey presents a risk of future danger in prison. The government's sole purpose in raising these factual issues now, in disregard for the process mandated by Fed. R. Crim. P. 32, is to further prejudice Mr. McCluskey in the eyes of the Bureau of Prisons. The Court should not permit the government to misuse the sentencing process in this way. For the reasons stated herein, Mr. McCluskey respectfully asks the Court to strike the government's sentencing memorandum on the ground that its objections are untimely. In the alternative, Mr. McCluskey asks the Court to determine that ruling on the factual issues the government raises is unnecessary because those issues will not affect sentencing. Mr. McCluskey also respectfully requests that nothing other than the amended PSR dated April 2, 2014, and the addendum dated April 24, 2014, be made available to the Bureau of Prisons.

**A.     The Government's Objections to Omissions in the PSR Are Untimely.**

Although the government does not raise specific objections to the PSR in its memorandum, it implicitly challenges the omission of certain information from that report. For example, the government goes into great detail regarding its

allegations of prior criminal conduct in response to the PSR's discussion of Mr. McCluskey's childhood abuse and brain damage.  [Doc. 1626 at 2-12 (responding to PSR ¶ 110).]   It is also resurrects its argument that Mr. McCluskey has an "affiliation" with the Aryan Brotherhood, apparently in response to the Probation Office's decision to remove this allegation based on Mr. McCluskey's timely objection to it.  [*Id*. at 9-12.]  The government's objections are untimely and the Court should not consider them.

The Probation Office disclosed the original PSR to the parties on February 26, 2014.  Pursuant to an order extending the time for objections, the parties' informal objections to the PSR were due March 31, 2014.  [Doc. 1602.]  The government submitted no objections to the PSR.  *See* Addendum to PSR at 1.[1]  In response to Mr. McCluskey's informal objections, the Probation Office disclosed an amended PSR on April 2, 2014.  Again, the government submitted no objections.

Federal Rule of Criminal Procedure 32(f)(1) requires the parties to "state in writing any objections, including objections to material information, sentencing guideline ranges, and policy statements contained in or omitted from the report" within fourteen days of disclosure.  The government's failure to submit timely

---

[1] Mr. McCluskey submitted his objections on March 31, 2014.  The Probation Office responded to those objections on April 2, 2014, and provided the parties with an amended PSR.  Because the amended PSR resolved the majority of issues Mr. McCluskey raised in his informal objections, he did not file formal objections.

objections means the Court is not required to hear its new objections at sentencing. *United States v. Hardwell*, 80 F.3d 1471, 1500 (10th Cir. 1996); *see also United States v. Overholt*, 307 F.3d 1231, 1251-52 (10th Cir. 2002); *United States v. Walters*, 28 Fed. Appx. 902, 908 (10th Cir. 2001) (unpublished).

Although Rule 32(i)(1)(D) permits the Court to allow a party to make a new objection at any time before sentence is imposed for "good cause," the government has not attempted to make such a showing. And given that the evidence the government purports to summarize in its memorandum has been available to it for years, it could not make the required showing in any event. Both parties had the opportunity to participate in the presentence investigation and to submit any objections they felt appropriate. If the government believed that the Probation Office omitted information relevant to this Court's sentencing decision, it should have brought that information to Probation's attention in a timely manner. It chose not to do so and should not now be allowed to raise new objections.

In addition, resolution of the many factual disputes raised by the government's late objections will not affect the sentence this Court will impose. Under Fed. R. Crim. P. 32(i)(3(B), a court need not rule on disputed portions of the PSR or other controverted matters if it determines "that a ruling is unnecessary either because the matter will not affect sentencing, or because the court will not consider the matter in sentencing." The Court must sentence Mr. McCluskey to a

life sentence without the possibility of release by virtue of the counts of conviction, regardless of whatever findings the government might ask it to make. Allowing the government to introduce additional evidence in support of the allegations contained in its sentencing memorandum is unnecessary and would result in a waste of time, money and judicial resources.

**B.    Resolution of the Factual Issues the Government Raises in Its Memorandum Will Require an Unnecessary Evidentiary Hearing and Needlessly Prolong Sentencing.**

Many of the new allegations the government raises in its memorandum are disputed.[2]  For example, Stevenson Williams, the inmate who the government alleges Mr. McCluskey attacked (Doc. 1636 at 6), originally told investigators that he had cut his own throat due to grief over the death of his son.  [Bates 14239-40, 14243, 14253-57.]  An Arizona Department investigation into the allegation that Mr. McCluskey was responsible for Mr. Williams' injuries resulted in a finding that the allegation was "unsubstantiated" for lack of evidence.  [Bates 14240.]  Later, when Mr. Stevenson was seeking protective custody for himself and his nephew and threatening litigation against the Department of Corrections, he made the allegation the government cites in its memorandum.  Resolution of this factual dispute would require consideration not only of documentary evidence, but likely

---

[2] Mr. McCluskey does not address every disputed factual issue in this response, nor does he discuss all evidence that bears on these issues.  To do so would have required his counsel to spend hours re-reviewing discovery in response to factual assertions that will make no difference at sentencing.  Instead, he offers the Court examples of such contested facts and evidence.

5

testimony from Mr. Williams.  However, the Court need not resolve the dispute as it will not affect the mandatory sentence of life without the possibility of release this Court will impose.  *See* Fed. R. Crim. P. 32(i)(3)(B).

Similarly, although the government alleges that Mr. McCluskey made threats against Ms. Welch and others while incarcerated in Arizona, it has produced no evidence that those threats were ever carried out. [Doc. 1636 at 8.] And its characterizations of Mr. McCluskey's communications regarding Joy Glattfelder are misleading.  For example, the government claims that during a telephone call with Ms. Glattfelder, Mr. McCluskey "intimidate[d] her and reprimand[ed] her for talking to law enforcement about his mother's involvement in the escape."  [Doc. 1636 at 8.]  To the contrary, throughout the call Mr. McCluskey profusely apologized to Ms. Glattfelder for the problems he had caused her.  Gov. Ex. 1172 at 1-2, 6, 16.  He also repeatedly told her to "do what you got to do" and reassured her he was not angry with her.  *Id*. at 4.  With respect to his mother, Mr. McCluskey said, "The only hard feelings I have is about my mom.  I don't think you should have done that to her.  But I know – I understand the situation I put you in.  There's no hard feelings between you and me." *Id*. at 4; *see also id*. at 5 ("… I don't think you had to do my mom.  But that's beside the point.  It's water under the bridge.  I'm not mad at you, I'm not mad at your kids, I'm not mad at your – any of your family, okay?" ).  When Ms. Glattfelder told Mr.

6

McCluskey that she had received death threats from Texas, Mr. McCluskey told her he had nothing to do with it and tried to reassure her. *Id*. at 2, 7-8. And there is absolutely no evidence that Mr. McCluskey had anything to do with those alleged threats.

The government also implicitly challenges the Probation Office's decision to remove from the PSR allegations that Mr. McCluskey was affiliated in some way with the Aryan Brotherhood (AB). [Doc. 1636 at 9-12.] As the government notes, Mr. McCluskey timely objected to the inclusion of that allegation in the initial PSR. April 2, 2014, Memorandum from Sami Geurts to the Honorable Judith Herrara at 1. Mr. McCluskey provided the Probation Office with documentation to support his objection. *Id*. Based on that information, the Probation Office removed the allegation from the PSR. *Id*.

Although defense counsel sent a copy of Mr. McCluskey's objections to the government, the government did not submit any response. Nor did the government respond when the Probation Office notified the parties on April 2, 2014, that it was removing the allegations from the report. The government's objection to the omission of this allegation from the PSR is untimely and should not be considered. *See Hardwell*, 80 F.3d at 1500.

The government states that it did not proceed at trial with the allegation that Mr. McCluskey has gang affiliations because it "had the potential to spawn

numerous minitrials and divert the jury's focus at the end of a lengthy trial." [Doc. 1636 at 9.] Its attempt to resurrect this issue at sentencing creates a similar risk: the necessity for a lengthy and complicated sentencing hearing over an issue that will in no way affect the sentence this Court must impose.

As this Court is aware, the defense has contested the government's allegation of gang affiliation throughout this case. [*See, e.g.*, Docs. 735, 892, 937.] Other than the statements of Tracy Province, the government has no evidence that Mr. McCluskey was ever part of the AB. And there is substantial evidence to the contrary. The Pennsylvania Department of Corrections searched its records in response to a subpoena in this case and reported that "John McCluskey did not have any STG (security threat group) affiliation while in our custody." Without citation to any supporting evidence, the government asserts "PDOC did not carefully track STGs during the time McCluskey was incarcerated there." [Doc. 1636 at 9.] This is simply not true. Had the government not withdrawn its gang affiliation allegations at trial, numerous witnesses from Pennsylvania would have testified that the PDOC has always been concerned about gang affiliations for security reasons and carefully tracked them. They also would have testified that they saw nothing that might lead them to believe that Mr. McCluskey was a member of an STG while incarcerated there. Further, they would have testified, and sponsored documentary evidence, that the PDOC investigated Mr. McCluskey

8

before he was accepted into its forestry program and determined that he had no STG affiliations.

The government likewise lacks evidence that Mr. McCluskey was affiliated with the AB in Arizona. The Arizona Department of Corrections (AZDOC) intake notes the government cites in its memorandum—which claim Mr. McCluskey admitted to membership in the "Peckerwoods" in Pennsylvania—do not identify the person to whom this statement was allegedly made.[3]  Furthermore, these notes say nothing about the AB.  By contrast, the notes for Tracy Province indicate he was validated as a member of the AB after his name was found on a membership list belonging to another validated member.  [Bates 8654.]

Like most prison systems, the Arizona Department of Corrections takes STG affiliation seriously.  When an inmate is alleged to be a member of an STG, the AZDOC undertakes a member validation process, during which it evaluates admissions, tattoos, and associations within the prison system, among other things. According to the AZDOC website:

> A (sic) inmate's STG membership is assessed by a hearing committee based on an objective review of that inmate's STG related activities. This is done by reviewing specific categories relating to the inmates activity, such as: Self Admission, Tattoos, Association, Photographs, etc. If the committee determines the inmate meets sufficent (sic) criteria he is then validated. The

---

[3] The government cites this intake report as support for its claim that Mr. McCluskey claimed to have earned a particular tattoo for committing an act of violence on behalf of the AB in Pennsylvania.  [Doc. 1636 at 10 (citing Bates 8653).]  As noted above, the report says nothing about the AB.  It also says nothing about acts of violence; it merely says he earned the tattoo in Pennsylvania.

      inmate may appeal the committee's decision at this time, or the inmate may elect to renounce his STG affiliation.

Arizona Department of Corrections, Security Threat Groups FAQ, http://www.azcorrections.gov/adc/STG/Divisions_Support_STG_faq.aspx#validation. Mr. McCluskey never underwent this process and was never validated as a member of an STG in Arizona.

      The government's claim that Mr. McCluskey's alleged AB association was "ratified" by senior leaders of the organization is based solely on statements by Tracy Province. [Doc. 1636 at 10-11 (citing Bates 14073-81).] According to Mr. Province, he never discussed Mr. McCluskey's alleged gang affiliation with Mr. McCluskey but heard from someone else that Mr. McCluskey was a member of the Aryan Brotherhood in Pennsylvania. [Bates 14073-74.] The government has no other evidence to support this allegation.[4]

      Finally, the government asserts that Mr. McCluskey has familial ties to members of the AB. [Doc. 1636 at 12.] The AB leader the government identifies, Bruce Lowry, is not the step-father of Mr. McCluskey's son-in-law, Jimmy Springer, as the government claims: he is simply a friend of Mr. Springer's mother. More importantly, during an interview with a defense investigator, Mr. Lowry

---

[4] The government makes much of Mr. McCluskey's tattoos, but provides no evidence that they are indicative of AB membership or affiliation. [Doc. 1636 at 9-10.] Instead, the government asks this Court to pile unsupported inference upon unsupported inference to reach the conclusion it advocates.

10

unequivocally stated that Mr. McCluskey is not, nor has he ever been, a member of the Aryan Brotherhood. Had the government proceeded with these allegations at trial, Mr. McCluskey likely would have called Mr. Lowry as a witness on this point.

The bottom line is that the government lacks evidence to support its claim that Mr. McCluskey is associated with the Aryan Brotherhood. It failed to timely object when the Probation Office removed this allegation from the PSR and should not be allowed to raise this objection now. In addition, given the complexity of the evidence, the need for out-of-state witnesses and potentially expert witnesses, allowing an evidentiary hearing on the government's allegation would require a considerable delay in the sentencing hearing. Whether or not Mr. McCluskey is a member of the AB or any other group is irrelevant to sentencing and it would be a waste of judicial resources to permit the government to pursue this allegation at the upcoming hearing.

**C.    Given the Lengthy Penalty Phase and the Thorough Presentence Report, the Court Has Sufficient Information to Sentence Mr. McCluskey in this Case.**

The penalty phase in this case lasted for two months, during which both sides presented significant testimony and documentary evidence regarding Mr. McCluskey's life history. That evidence gave the Court and the jury a good understanding of both the positive and negative aspects of Mr. McCluskey's life.

11

Based on that evidence, three jurors determined that Mr. McCluskey's life has value and that a sentence of life without the possibility of release is sufficient punishment for the crimes for which the jury convicted him. Based on their votes, the Court is now statutorily required to sentence Mr. McCluskey to life without release.

Although the law mandates the sentence in this case, the Probation Office has prepared a thorough 38-page presentence report to aid the Court in sentencing, and the Bureau of Prisons in placing, Mr. McCluskey. The government's sentencing memorandum adds nothing and its objections to omissions in the PSR are untimely.

## **CONCLUSION**

For the foregoing reasons, Defendant John Charles McCluskey respectfully asks the Court to strike the government's sentencing memorandum on the ground that its objections are untimely. In the alternative, Mr. McCluskey asks the Court to determine that ruling on the factual issues the government raises is unnecessary because those issues will not affect sentencing. Mr. McCluskey also respectfully requests that nothing other than the amended PSR dated April 2, 2014, and the addendum dated April 24, 2014, be made available to the Bureau of Prisons.

Dated: May 20, 2014

Respectfully submitted,

/s/ Michael N. Burt_____
Michael N. Burt
1000 Brannan Street, Suite 400
San Francisco, CA 94103-4888
415/522-1508


/s/ Theresa M. Duncan_____
Theresa M. Duncan
Duncan Earnest, LLC
600 Central Ave. SE
Suite 204
Albuquerque, NM 87102
505-710-6586

/s/ Gary C. Mitchell_____
Gary C. Mitchell
Gary C. Mitchell, P.C.
PO Box 2460
Ruidoso, NM 88355
(575) 257-3070

Attorneys for Defendant John McCluskey

**CERTIFICATE OF SERVICE**

I certify that on May 20, 2014, I sent a copy of the foregoing pleading to counsel for the government and U.S. Probation by electronic mail.

/s/ Theresa M. Duncan
Theresa M. Duncan